## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALESSANDRA FISSINGER-FIGUEROA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>THE CONTROL GROUP MEDIA COMPANY, LLC, a Delaware limited liability company; PEOPLECONNECT, INC., a Delaware corporation, TRUTHFINDER, LLC., a Delaware limited liability company, and INTELIUS LLC, a Delaware limited liability company,<br><br>*Defendants*. | Case No.:<br><br>Judge: |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Alessandra Fissinger-Figueroa brings this Class Action Complaint against Defendants The Control Group Media Company, LLC, PeopleConnect, Inc., TruthFinder, LLC, and Intelius LLC to put an end to their unlawful practice of using the names and identities of Illinois residents without their consent to promote their services. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows upon personal knowledge as to her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her own attorneys.

## NATURE OF THE ACTION

1.      Defendants operate a range of websites that purport to sell access to databases containing proprietary "detailed reports" about people to anybody willing to pay for a monthly subscription.

1

2.      To market their services, Defendants encourage consumers to perform a free "people search" on their respective websites. When consumers perform a free search for an individual—by typing the individual's first and last name into the search bar—Defendants display webpages featuring the searched individual's full name alongside certain uniquely identifying information, including age, location, and names of relatives. The purpose of these pages is twofold: first, they show potential customers that Defendants' databases contain detailed reports for the *specific* individual who is the subject of a search and represent that the detailed report contains much more information about the individual than the "free" report, and second, they offer to sell them a paid subscription to their services, where they can access detailed reports about *anybody* in their database. In other words, Defendants do not offer to sell detailed reports about the individuals searched on their websites, but rather, use those individuals' identities to sell subscriptions to Defendants' paid services.

3.      Unsurprisingly, the people appearing in these advertisements never provided Defendants with their consent (written or otherwise) to use their identities for any reason, let alone for Defendants' own marketing and commercial purposes.

4.      Defendants violated—and continue to violate—the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq*., by using the full names and other aspects of the identities of Illinois residents in Defendants' advertisements without consent and for Defendants' commercial gain.

## **PARTIES**

5.      Plaintiff Alessandra Fissinger-Figueroa is a natural person and a citizen of the State of Illinois.

6.      Defendant The Control Group Media Company, LLC ("TCG") is a limited

liability company existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, CA 92101. TCG operates under a fictitious business name of "PeopleConnect."

7.     Defendant PeopleConnect, Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business located at 1687 114th Ave SE, Ste. 200, Bellevue, WA, 98004.

8.     Defendant TruthFinder, LLC is a corporation existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, CA 92101. Upon information and belief, Defendant TruthFinder, LLC owns and operates the website TruthFinder.com.

9.     Defendant Intelius LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at One Sansome Street, 37th Floor, San Francisco, CA 94104. Upon information and belief, Defendant Intelius LLC owns and operates the websites Intelius.com and USSearch.com.

10.     TCG controls and directly operates Defendants TruthFinder, LLC, and Intelius LLC—and their respective websites—as a single enterprise, including by sharing its management and employees. The enterprise was previously controlled and directly operated by Defendant PeopleConnect Inc., before being transferred to TCG in approximately mid-2021.[1]

---

[1]     Since mid-2021, TCG's Senior Vice President of Product has submitted multiple declarations regarding the business practices of Intelius and TruthFinder, which he confirmed are owned and operated by TCG. *See La Fronza v. PeopleConnect*, No. 1:21-cv-03027 (N.D. Ill.), Dkt. 24-1 ¶¶ 1-3 (testifying that he "perform[ed] work for Intelius LLC," which "operates the website www.USSearch.com" and that he was "responsible for the user interface of US Search, including the design of the webpages that users see and interact with on the website"); *La Fronza v. TruthFinder*, No. 1:21-cv-03026 (N.D. Ill.), Dkt. 20-1 (same re: TCG and TruthFinder, LLC and the website www.truthfinder.com). In March 2021, however, PeopleConnect Inc.'s Associate Director of Compliance and IP testified that PeopleConnect, Inc. then owned and operated Intelius.com. *See La Fronza v. PeopleConnect et al.*, No. 1:21-cv-00280 (N.D. Ill.), Dkt. 22-1.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different from the Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

12.     This Court has personal jurisdiction over Defendants because they transact significant business in this District, misappropriate the identities of people that they know reside in this District, and the unlawful conduct alleged in the Complaint occurred in and emanated from this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to this claim occurred in this District.

## COMMON FACTUAL ALLEGATIONS

**I.      The Illinois Right of Publicity Act**

14.     In 1999, the Illinois Legislature recognized that every individual has the "right to control and to choose whether and how [his or her] identity [is used] for commercial purposes," 765 ILCS 1075/10, and as a result, passed the IRPA to protect individual property rights and prevent the exploitation of individuals' identities for another's commercial gain.

15.     The Act protects individuals from the unauthorized use of *any* of their identity attributes, including but not limited to, their names, signatures, photographs, images, likenesses, or voices in the sale or advertisement of goods, merchandise, products, and services.

16.     In fact, the IRPA states that "a person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written

4

consent from the appropriate person…." 765 ILCS 1075/30. Notably, the IRPA does not require the person seeking relief under the Act to be a public figure.

## II.    Defendants Use Individuals' Names to Promote Paid Subscriptions to Defendants' People Search Websites

17.    TCG controls and operates (and until mid-2021 PeopleConnect, Inc. controlled and operated) Defendants TruthFinder, LLC and Intelius LLC, and their respective "people search" websites: TruthFinder.com, Intelius.com, and USSearch.com (together, the "People Search Websites").[2] TCG and PeopleConnect, Inc. designed each of the People Search Websites to operate in a substantially similar way: to misappropriate consumers' identities for their own commercial gain by using Plaintiff's and the Class's identities in conjunction with an offer to purchase a paid membership to access its database—entirely without their knowledge or consent. Overviews of the three People Search Websites follow.

### A.    The Intelius Website

18.    TCG owns and operates (and until mid-2021, PeopleConnect, Inc. owned and operated) Intelius.com, a website that sells detailed profile reports about individuals and "access to the best information available online." The reports are compiled in part from databases and public record repositories.

19.    Intelius reports must be purchased from its website and may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

20.    As shown in Figure 1 below, when a consumer visits Intelius.com and searches for an individual by using their first and last name, Intelius displays a list of the individuals

---

[2]      TCG also owns and operates a fourth "people search" website called Instant Checkmate. Instant Checkmate's conduct is the subject of a separate class action lawsuit in this district, pending before the Honorable Gary S. Feinerman. *See Fischer v. Instant Checkmate LLC*, No. 19-cv-4892 (N.D. Ill.).

found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members (the "Intelius Marketing Page").[3]



(**Figure 1.**)

21.     Once a consumer selects an individual (by clicking "Open Preview") from the Intelius Marketing Page, Intelius solicits the consumer's name and email address, purportedly to allow the user "[t]o save [their] results."

22.     Intelius then displays a checkout page with two subscription offers: (i) a "Most Popular" tier costing $24.86 per month with access to unlimited reports about any person, and (ii) a "Power User" tier costing $42.25 with access to two months of unlimited reports about any person. *See* Figure 2.

---

[3]     Plaintiff's attorneys, who collected the screenshots included in this complaint from Defendants' websites as part of their pre-suit investigation, timely opted out of Defendants' arbitration agreements. In any event, Plaintiff's retention agreements expressly preclude Plaintiff's attorneys from agreeing to arbitrate claims on her behalf.



(**Figure 2.**)

23.     If the consumer navigates to the checkout page but does not complete a purchase, Intelius sends them numerous follow-up emails to induce a sale (the "Intelius Marketing Emails"). The Intelius Marketing Emails instruct consumers that "Your Report is Ready to View," and list the first name and last initial of the individual who was the subject of the consumer's search. *See* Figure 3. Intelius commercializes a person's identity every time it uses it in a Marketing Email to induce the sale of a product to a consumer. Consumers who follow the link in the Intelius Marketing Emails to "View Your Report Now" are returned to the checkout page.

**[Ext] Your Report on Alessandra F. is Ready!**
1 message

**Intelius** <accounts@mg.mailer.intelius.com>                                    Thu, Jul 7, 2022 at 4:57 PM
To:

◁ I N T E L I U S®

## Your Report is Ready to View

Alessandra F.

_____

2+ Address Records Found
22 Personal Records Found
1 Images Found
Public Social Profiles
Assets, Licenses, and more

[ VIEW YOUR REPORT NOW ]

**(Figure 3.)**

24.     Though consumers may visit Intelius.com to search and potentially obtain a report
on one specific individual, Intelius ultimately offers for sale an entirely different product or
service. Intelius is not offering for sale only the report on the searched individual. Instead,
Intelius is offering for sale a monthly subscription service that grants the purchaser unlimited
access to background reports on anybody in its database. The searched-for individual's report is
a small part of a large database with reports on millions of people.

25.     In this way, Intelius misappropriated people's identities (individuals' names and
other identifying information such as their age, location, and known relatives) for its own
commercial benefit (i.e., to market and promote a monthly subscription to access unlimited
reports on individuals in its database).

26.     Most importantly, Intelius never obtained written consent from Plaintiff and Class
members to use their names for any reason, let alone for commercial purposes. Defendants never

8

notified Plaintiff and Class members that their names would appear on the Intelius Marketing Page or in Intelius Marketing Emails in conjunction with an offer to purchase access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG and Intelius whatsoever.

### B.     The TruthFinder Website

27.     TCG owns and operates (and until mid-2021, PeopleConnect owned and operated) TruthFinder.com, a website that sells comprehensive background reports "about almost anyone." The reports are compiled in part from databases and public record repositories.

28.     TruthFinder reports must be purchased from its website and may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

29.     When a consumer visits TruthFinder.com and searches for an individual by using their first and last name, TruthFinder displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members (the "TruthFinder Marketing Page"). *See* Figure 4.



(**Figure 4.**)

30.     Once a consumer selects an individual (by clicking "Open Report") from the TruthFinder Marketing Page, TruthFinder solicits the consumer's name and email address, purportedly to allow the user to "Save [Their] Result."

31.     TruthFinder then displays a checkout page with two offers to purchase a report: (i) a "Most Popular" Tier costing $28.05 per month with access to one month of unlimited reports and (ii) a "Power Users" tier costing $46.56 with access to two months of unlimited reports. *See* Figure 5.



(**Figure 5.**)

32.     If the user navigates to the checkout page but does not complete a purchase, TruthFinder sends them numerous follow-up emails to induce a sale (the "TruthFinder Marketing Emails"). The TruthFinder Marketing Emails instruct consumers "Don't Miss Out!," and list the first name and last initial of the individual who was the subject of the search. *See* Figure 6. TruthFinder commercializes a person's identity every time it uses it in a Marketing Email to induce the sale of a product to a consumer. Consumers who follow the link in the TruthFinder Marketing Emails to "View Report" are returned to the checkout page.

**[Ext] Still Searching for Alessandra F.'s Records?**

---

**TruthFinder** <accounts@mg.truthfinder.com>                                                    Tue, Jul 12, 2022 at 11:06 PM
To:

Search: Alessandra-F

View as Webpage | Unsubscribe



**DON'T MISS OUT!**
See what we've uncovered, and how we can keep you protected and
informed with background reports!

---

Alessandra F.

---

2+ Address Records Found
16 Personal Records Found
1 Images Found
Public Social Profiles
Assets, Licenses, and more

View Report

**(Figure 6.)**

33.     While a consumer may visit TruthFinder.com to search and potentially obtain a
report on one specific individual, TruthFinder ultimately offers for sale an entirely different
product. TruthFinder is not offering for sale only the report on the searched individual. Instead,
TruthFinder is offering for sale a monthly subscription service that grants the purchaser
unlimited access to background reports on anybody in its database. The searched for individual's
report is a small part of a large database with reports on millions of people.

34.     In this way, TruthFinder misappropriated people's identities (individuals' names
and other identifying information such as their age, location, and known relatives) for its own
commercial benefit (to market and promote a monthly subscription to access unlimited reports

on individuals in its database).

35.     Most importantly, TruthFinder never obtained written consent from Plaintiff and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiff and Class members that their names would appear on the TruthFinder Marketing Page or in TruthFinder Marketing Emails in conjunction with an offer to purchase access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG and TruthFinder whatsoever.

### C.     The US Search Website

36.     TCG owns and operates (and until mid-2021, PeopleConnect, Inc. owned and operated) USSearch.com, a website that sells comprehensive background reports "about almost anyone." The reports are compiled in part from databases and public record repositories.

37.     US Search reports must be purchased from its website and may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

38.     When a consumer visits USSearch.com and searches for an individual by using their first and last name, US Search displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location, and names of their immediate family members (the "US Search Marketing Page"). *See* Figure 7.





(**Figure 7.**)

39. Once a consumer selects an individual (by clicking "Get This Report") from the US Search Marketing Page, US Search solicits the consumer's name and email address, purportedly to allow the user "To save [their] results."

40. US Search displays a checkout page with an offer to purchase a report costing $19.86 per month, for one month of unlimited reports. *See* Figure 8.



(**Figure 8.**)

41. If the consumer navigates to the checkout page but does not complete a purchase, US Search sends them numerous follow-up emails to induce a sale (the "US Search Marketing

Emails"). The US Search Marketing Emails instruct consumers that "Your report on [name] is ready and waiting!," and list the first name and last initial of the individual who was the subject of the search. *See* Figure 9. US Search commercializes a person's identity every time it uses it in a Marketing Email to induce the sale of a product to a consumer. Consumers who click the link in the US Search Marketing Emails to "Take me to my report" are returned to the checkout page.

---

**[Ext] Alessandra F.'s Report Is Ready & 50% OFF!**
1 m

---

**US Search** <accounts@mg.ussearch.com>                              Fri, Jul 8, 2022 at 11:16 AM
To: zseaman-grant@edelson.com

View As A Webpage | Unsubscribe



Welcome to US Search!

US Search offers a fast and easy way to find out more about almost anyone. This sensitive data can be used to satisfy your curiosity, protect your family, and find out the truth about the people in your life.

You're now subscribed to receive our emails! Keep an eye out for them, as they contain important and exciting information about US Search.

You're almost there! Your report on Alessandra F. is ready and waiting! Use the link below to complete your search with a **special 50% introductory offer!**

**TAKE ME TO MY REPORT**

**(Figure 9.)**

42.     While a consumer may visit USSearch.com to search and potentially obtain a report on one specific individual, US Search ultimately offers for sale an entirely different product. US Search is not offering for sale only the report on the searched individual. Instead, US Search is offering for sale a monthly subscription service that grants the purchaser unlimited access to background reports on anybody in its database. The searched for individual's report is a

14

small part of a large database with reports on millions of people.

43.     In this way, US Search misappropriated people's identities (individuals' names and other identifying information such as their age, location, and known relatives) for its own commercial benefit (to market and promote a monthly subscription to access unlimited reports on individuals in its database).

44.     Most importantly, US Search never obtained written consent from Plaintiff and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiff and Class members that their names would appear on the US Search Marketing Page and in US Search Marketing Emails in conjunction with an offer to purchase access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with TCG and US Search whatsoever.

45.     Accordingly, Plaintiff, on behalf of herself and other similarly situated Illinois residents, brings this action against Defendants for their ongoing violations of the IRPA, and seeks (1) injunctive relief requiring Defendants to cease using Illinois residents' identities for commercial purposes, including on their various Marketing Pages and in their various Marketing Emails, (2) the greater of an award of actual damages, including profits derived from the unauthorized use of individuals' names, or statutory damages, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees.

### FACTS SPECIFIC TO PLAINTIFF ALEASSANDRA FISSINGER-FIGUEROA

46.     Plaintiff Alessandra Fissinger-Figueroa discovered that Defendants were using her identity to solicit the purchase of paid subscriptions to their various websites.

47.     Defendants specifically identified Plaintiff Fissinger-Figueroa by her name, location, age, and names of immediate family members on the Intelius, TruthFinder, and US

15

Search Marketing Pages. *See* Figures 1, 4, and 7.

48.    Plaintiff Fissinger-Figueroa never provided Defendants with her written consent (or consent of any kind) to use any attribute of her identity for commercial purposes, and certainly never authorized Defendants to use her identity to promote any of their products or services.

49.    Plaintiff Fissinger-Figueroa is not and has never been a customer of any of Defendants' websites. In fact, Fissinger-Figueroa has no relationship with TCG or any of the Defendants whatsoever.

## CLASS ALLEGATIONS

50.    **Class Definition**: Plaintiff brings this action on behalf of herself and a Class and Subclasses (referred to as the "Class", unless otherwise stated) defined as follows:

> **PeopleConnect Class:** All Illinois residents (1) whose identities were displayed on the Marketing Pages or in the Marketing Emails of any of the People Search Websites, and (2) who have never purchased any products or services from PeopleConnect/TCG or any of the People Search Websites.
>
> **Intelius Subclass:** All Illinois residents (1) whose identities were displayed on the Intelius Marketing Page or in the Intelius Marketing Emails, and (2) who have never purchased any products or services on Intelius.com.
>
> **TruthFinder Subclass:** All Illinois residents (1) whose identities were displayed on the TruthFinder Marketing Page or in the TruthFinder Marketing Emails, and (2) who have never purchased any products or services on TruthFinder.com.
>
> **US Search Subclass:** All Illinois residents (1) whose identities were displayed on the US Search Marketing Page or in the US Search Marketing Emails, and (2) who have never purchased any products or services on USSearch.com.

51.    Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a

16

controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

52.     **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Members of the Class can be identified through Defendants' records.

53.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited, to the following:

    a.     Whether Defendants used Plaintiff's and Class members' names and identities for a commercial purpose;

    b.     Whether Plaintiff and members of the Class provided their written consent to Defendants to use their names and identities in advertisements;

    c.     Whether the conduct described herein constitutes a violation of the IRPA; and,

    d.     Whether Plaintiff and the members of the Class are entitled to injunctive relief.

54.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

55. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

56. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

57. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single Court. Economies of time, effort and expense will be

fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.***
**(On behalf of Plaintiff and the Class)**

58.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.    The IRPA prohibits using a person's name, photograph, image, or likeness for the

purpose of advertising or promoting products, merchandise, goods, or services without written

consent. *See* 765 ILCS 1075/1, *et seq.*

60.    Defendants sell subscription-based access to their databases containing detailed

reports about people.

61.    As described above, to promote those reports, Defendants used Plaintiff's and the

putative class members' identities on their various Marketing Pages, which display the

individuals found within its records that match the searched name, alongside uniquely

identifying information such as each person's current age, location, and names of their

immediate family members. This information serves to identify the individual and demonstrate

that there are detailed reports in their databases for the person they searched for. Defendants

further used Plaintiff's and the putative class members' identities in their various Marketing

Emails to induce sales of their subscription products.

62.    The Marketing Pages and Marketing Emails have a commercial purpose in that

they promote the Defendants' websites and paid memberships to access reports in their

databases.

63.    Plaintiff and the members of the Class never provided Defendants with their

written consent to use their full names (or any attribute of their identity) in advertisements for access to Defendants' paid memberships. Defendants never notified Plaintiff and the Class members that their names would be used in commercial advertisements.

64.     Defendants deprived Plaintiff and the Class members of control over whether and how their names can be used for commercial purposes.

65.     Based upon Defendants' violation of the IRPA, Plaintiff and the members of the Class are entitled to (1) an injunction requiring Defendants to cease using Plaintiff's and Class members' names and any attributes of their identities to advertise their products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiff's and Class members' names and identities) or statutory damages of $1,000 per violation to the members of the Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alessandra Fissinger-Figueroa, individually and on behalf of the Class, pray that the Court enter an Order:

a.      Certifying this case as a class action defined above, appoint Alessandra Fissinger-Figueroa as Class Representative, and appoint her counsel as Class Counsel;

b.      Declaring that Defendants' actions described herein constitute a violation of the IRPA;

c.      Awarding injunctive and other equitable relief as necessary to protect the interest of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

d.      Awarding the greater of actual damages, including the profits derived from the wrongful and unlawful acts described herein, or statutory damages in the amount of $1,000 per violation, to the members of the Class;

e.      Awarding punitive damages where applicable;

20

f.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

g.      Awarding Plaintiff and the Class pre- and post-judgment interest; and

h.      Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all matters that can be so tried.

Respectfully Submitted,

**ALESSANDRA FISSINGER-FIGUEROA**, individually and on behalf of all others similarly situated,

Dated: August 9, 2022

By: */s/ Yaman Salahi*
      One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin Thomassen
bthomassen@edelson.com
Eli Wade-Scott
ewadescott@edelson.com
Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Yaman Salahi
ysalahi@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163

*Attorneys for Plaintiff and the putative Class*